**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TYESHA MOODY, individually and as successor-in-interest to Decedent, Jaque Rabon; and ROBERT RABON, individually and as successor-in-interest to Decedent, Jaque Rabon,

Plaintiffs,

v.

COUNTY OF SAN BERNARDINO; and DOES 1 through 10, inclusive,

Defendants.

**Case No. 5:26-cv-4811**

**COMPLAINT FOR DAMAGES**

1. Fourth Amendment, Excessive Force (42 U.S.C. § 1983)
2. Fourth Amendment, Denial of Medical Care (42 U.S.C. § 1983)
3. First and Fourteenth Amendments, Interference with Familial Relationship (42 U.S.C. § 1983)
4. Municipal Liability, Unconstitutional Custom or Policy (42 U.S.C. § 1983)
5. Municipal Liability, Failure to Train (42 U.S.C. § 1983)
6. Municipal Liability, Ratification (42 U.S.C. § 1983)
7. Battery
8. Negligence
9. Violation of Bane Act (Cal. Civil Code §52.1)

**DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This civil rights and state tort action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and state law in connection with the fatal police shooting of Plaintiffs' son, Jaque Rabon, on January 22, 2026.

2. Plaintiffs allege that the death of Jaque Rabon was a result of Defendants' excessive use of deadly force, Defendants' failure to timely provide reasonable medical care to Jaque Rabon despite his serious medical condition after being shot, Defendants' deliberate indifference to Jaque Rabon's Constitutional rights, and Defendants' negligence.

3. The policies and customs behind shootings of civilians such as Jaque Rabon, and the failure to de-escalate the interaction and employ readily available alternative methods and tactics are fundamentally unconstitutional and have violated the civil rights of residents of the COUNTY, such as Plaintiffs and Jaque Rabon. Accordingly, Plaintiffs herein seek by means of this civil rights action to hold accountable those responsible for the death of Jaque Rabon, and to challenge the unconstitutional policies and practices of the COUNTY.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in this district and because, on information and belief, all Defendants reside in this district.

**PARTIES**

6. Plaintiff TYESHA MOODY is an individual residing in the County of San Bernardino, California and is the natural mother of Jaque Rabon. TYESHA MOODY sues in her individual capacity as the mother of Jaque Rabon and a representative capacity as successor-in-interest to Jaque Rabon pursuant to California Code of Civil Procedure § 377.60. TYESHA MOODY seeks both survival and wrongful death damages under federal and state law.

7. Plaintiff ROBERT RABON is an individual residing in the County of San Bernardino, California and is the natural father of Jaque Rabon. ROBERT RABON sues in his individual capacity as the father of Jaque Rabon and a representative capacity as a successor-in-interest to Jaque Rabon pursuant to California Code of Civil Procedure § 377.60. ROBERT RABON seeks both survival and wrongful death damages under federal and state law.

8. At all relevant times, Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is and was a municipal corporation existing under the laws of the State of California. COUNTY is a chartered subdivision of the State of California with the capacity to be sued. COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the San Bernardino County Sheriff's Department and its agents and employees. At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and of the State of California. At all relevant times, COUNTY was the employer of some or all of Defendant DOES 1-10.

9. Defendants DOES 1-7 are law enforcement officers, including deputies for the COUNTY's Sheriff's Department. At all relevant times, DOES 1-7 were acting under color of law within the course and scope of their duties as officers for the Sheriff's Department; and were acting with the complete authority and

ratification of their principal, Defendant COUNTY.

10. Defendants DOES 8-10 are law enforcement officers for agencies other than the COUNTY's Sheriff's Department, the identity/identities of which are presently unknown to Plaintiffs. At all relevant times, DOES 8-10 were acting under color of law within the course and scope of their duties as officers for their respective law enforcement agencies; and were acting with the complete authority and ratification of their principals.

11. On information and belief, DOES 1-10 ("DOE OFFICERS") were residents of the County of San Bernardino, California, and/or the County of Riverside, California, at all relevant times.

12. In doing the acts, failings, and/or omissions as hereinafter described, Defendants DOE OFFICERS were acting on the implied and actual permission and consent of Defendant COUNTY.

13. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave to amend this compliant to show the true names and capacities of these Defendants when they have been ascertained. Each of the fictiously named Defendants is responsible in some manner for the conduct or liabilities alleged herin.

14. Defendants DOES 1-10 are sued in their individual capacities.

15. At all times mentioned herein, each and every Defenadant, including DOES 1-10, was the agent of each and every other Defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every Defendant.

16. All of the acts complained of herein by Plaintiffs against Defendants, including DOES 1-10, were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting with the course, purpose, and scope of said agency, service, and/or

employment capacity. Moreover, Defendants and their agents ratified all of the acts complained herein.

17. On or around June 10, 2026, Plaintiffs filed comprehensive and timely claims for damages with the County of San Bernardino pursuant to the applicable sections of the California Government Code. Said claims were denied on July 13, 2026.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

18. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

19. On or about January 22, 2026, law enforcement officials including DOE OFFICERS sought to apprehend decedent Jaque Rabon ("Mr. Rabon") based, on information and belief, on Mr. Rabon's alleged prior failure to appear for a court hearing.

20. While Mr. Rabon was outside of a shopping center at the 3700 block of Tyler Street in the City of Riverside, California, DOE OFFICERS, who were not in uniform and who had driven to the shopping center in unmarked vehicles, exited their vehicles.

21. DOE OFFICERS immediately escalated the situation when, without identifying themselves as law enforcement officers, they immediately drew their firearms and ran toward Mr. Rabon.

22. While Mr. Rabon moved away from DOE OFFICERS, Mr. Rabon raised his hands in the air, at which point DOE 1 fired multiple gunshots at Mr. Rabon while Mr. Rabon was not facing any officer. DOE 1's gunshots struck Mr. Rabon, causing him to fall to the ground.

23. While Mr. Rabon was lying on the ground, already struck by DOE 1's gunshots, DOE OFFICERS approached, surrounded Mr. Rabon, and fired additional

gunshots at Mr. Rabon. Most or all of these gunshots were fired at Mr. Rabon's back while he lay chest-down on the ground, with his hands visible at his sides.

24. None of DOE OFFICERS issued any verbal warning to Mr. Rabon that deadly force would be used against him at any point before DOE OFFICERS fired their gunshots at Mr. Rabon.

25. At the time of the shooting, Mr. Rabon was not armed with or holding any weapon, was visibly not holding any weapon, had not aimed any weapon toward DOE OFFICERS, had made no aggressive movements, and had not moved toward DOE OFFICERS or any member of the public in any manner.

26. At no time during the encounter did Mr. Rabon verbally threaten to harm anyone.

27. Prior to the shooting, DOE OFFICERS did not issue appropriate commands to Mr. Rabon.

28. DOE OFFICERS did not employ tactics to de-escalate the situation, failed to give Mr. Rabon time and space to understand and accept the presence of the officers, failed to approach and speak to Mr. Rabon in a non-threatening manner, and failed to give Mr. Rabon the opportunity to consent to and cooperate with the instructions of the officers in a manner he could understand.

29. Mr. Rabon did not pose an immediate threat of death or serious bodily harm to anyone at the time DOE OFFICERS shot and killed him. On information and belief, DOE OFFICERS had alternate means of neutralizing and/or effectuating the seizure of Mr. Rabon available, including through any of a variety of readily available less-than-lethal means or strategies. The force used by DOE OFFICERS was unnecessary, excessive, and unreasonable under the totality of the circumstances.

30. DOE OFFICERS shot Mr. Rabon even though he did not pose an immediate threat of death or serious bodily injury to DOE OFFICERS or anyone else and there were other less lethal options available. DOE OFFICERS did not show a reverance for human life, and this was not an immediate defense of life situation.

31. Based on information and belief, after DOE OFFICERS discharged their firearms and became aware of Mr. Rabon's deteriorating physical condition, DOE OFFICERS waited several minutes before summoning paramedics to render medical care, and further delayed paramedics' access to Mr. Rabon upon arrival.

32. Mr. Rabon died as a result of his injuries caused by DOE OFFICERS.

33. Plaintiffs TYESHA MOODY and ROBERT RABON are Mr. Rabon's successors in interest as defined in Section 377.11 of the Califoria Code of Civil Procedure and succeed to Mr. Rabon's interest in this action as the natural parents of Mr. Rabon.

## FIRST CLAIM FOR RELIEF

### Unreasonable Search and Seizure - Excessive Force (42 U.S.C. § 1983)

### Plaintiffs against Defendants DOES 1-10

34. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

35. The unreasonable use of force by Defendants DOE OFFICERS deprived Mr. Rabon of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Mr. Rabon under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

36. As a result, Mr. Rabon suffered extreme pain and suffering and eventually suffered a loss of life. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Rabon, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

37. As a result of the conduct of Defendants DOE OFFICERS, they are liable for Mr. Rabon's injuries, either because they were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

38. This use of deadly force was excessive and unreasonable under the circumstances, especially since Mr. Rabon never attempted to physically injure DOE OFFICERS or anyone else prior to being fatally shot. Further, Mr. Rabon never verbally threatened anyone and never pointed a weapon at DOE OFFICERS or anyone else, prior to being fatally shot. Mr. Rabon did not pose an immediate threat of death or serious bodily injury to anyone at the time of the shooting. Defendants' actions thus deprived Mr. Rabon of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.

39. The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Rabon and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE OFFICERS.

40. As a direct and proximate result of the wrongful death of Mr. Rabon, Plaintiffs suffered the loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, and guidance of Mr. Rabon. Accordingly, DOE OFFICERS are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

41. Plaintiffs also bring this claim as successors-in-interest to Mr. Rabon and seek both survival and wrongful death damages for the violation of Mr. Rabon's rights.

42. Plaintiffs also seek attorney's fees and costs under this claim.

## SECOND CLAIM FOR RELIEF

**Fourth Amendment - Denial of Medical Care (42 U.S.C. § 1983)**

**Plaintiffs against Defendants DOES 1-10**

43. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

44. The denial of medical care by Defendants DOE OFFICERS deprived Mr. Rabon of his right to be secure in his persons against unreasonable searches and seizures as guaranteed to Mr. Rabon under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

45. As a result, Mr. Rabon suffered extreme mental and physical pain and eventually suffered a loss of life. Plaintiffs have also been deprived of the life-long love, companishionship, comfort, support, society, care, and sustenance of Mr. Rabon, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

46. Defendants DOE OFFICERS knew that failure to provide timely medical treatment to Mr. Rabon could result in further significant injury or the unnecessary and wanton infliction of pain, but disregarded that serious medical need, causing Mr. Rabon's death.

47. The conduct of Defendants DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Rabon and therefore warrants the imposition of exemplary and punitive damages as to Defendant DOE OFFICERS.

48. Plaintiffs also bring this claim as successors-in-interest to the Mr. Rabon and seek both survival and wrongful death damages for the violation of Mr. Rabon's rights.

49. Plaintiffs also seek attorney's fees and costs under this claim.

## THIRD CLAIM FOR RELIEF

**First and Fourteenth Amendments – Interference with Familial Relationship**

**(42 U.S.C. § 1983)**

**Plaintiffs against Defendants DOES 1-10**

50. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

51. Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in their familial relationship with their son, Mr. Rabon. Plaintiffs also had a cognizable interest under the First Amendment to the United States Constitution to be free from state actions that unreasonably interfere with their familial relationship and association with their son, Mr. Rabon.

52. As a result of the excessive force by Defendant DOE OFFICERS, Mr. Rabon died. Plaintiffs were thereby deprived of their constitutional right of familial relationship with Mr. Rabon.

53. The aforementioned actions of DOE OFFICERS, along with any undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of Mr. Rabon and Plaintiffs and with purpose to harm unrelated to any legitimate law enforcement objective.

54. Defendant DOE OFFICERS, acting under color of state law, thus violated the First and Fourteenth Amendment rights of Plaintiffs to be free from unwarranted inferference with their familial relationship and right of association with Mr. Rabon.

55. Defendants DOE OFFICERS, acting under color of state law, thus violated the First and Fourteenth Amendment rights of Mr. Rabon and Plaintiffs.

56. As a direct and proximate cause of the actions of DOE OFFICERS, Plaintiffs have suffered emotionally and have been deprived of the life-long love, companishionship, comfort, support, society, care, and sustenance of Mr. Rabon, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

57. As a result of the conduct of DOE OFFICERS, they are liable for Mr. Rabon's injuries because they were integral participants in the denial of due process

and free association rights.

58. The conduct of DOE OFFICERS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Mr. Rabon and for the rights of Plaintiffs, and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOE OFFICERS.

59. Plaintiffs bring this claim individually and seek wrongful death damages under this claim for the interference with Plaintiffs' familial relationship and right of association with Mr. Rabon.

60. Plaintiffs also seek attorney's fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

### Muncipal Liability for Unconstitutional Custom or Policy (42 U.S.C. § 1983)

### Plaintiffs against Defendant COUNTY OF SAN BERNARDINO

61. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

62. On information and belief, COUNTY made a formal decision that the shooting of Mr. Rabon was found to be "within policy" of the COUNTY's Sheriff's Department protocols, notwithstanding that Mr. Rabon was not an imminent threat to DOE OFFICERS when he was shot. This manifests a deliberate indifference to the civil rights of the residents of the COUNTY.

63. On information and Defendant COUNTY and COUNTY executives ratified, acquiesced, and condoned the shooting of Mr. Rabon by DOE OFFICERS.

64. On information and belief, DOE OFFICERS, were not disciplined, and were not given additional training, after the shooting of Mr. Rabon, which evidences ratification and acquiescence in the shooting of Mr. Rabon by DOE OFFICERS.

65. On and for some time prior to January 22, 2026, and continuing to the present date, Defendant COUNTY deprived Mr. Rabon and Plaintiffs of the rights and liberties secured to them by the First, Fourth, and Fourteenth Amendments to the

United States Constitution, because said Defendant and its supervising and managerial employees, acted with deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and Mr. Rabon, and of persons in their class, situation and comparable position in particularly, knowingly maintained, enforced, and applied an official recognized custom, policy, and practice of:

a. Employing and retaining as police officers and other personnel, including DOE OFFICERS, whom Defendant COUNTY at all times material herein knew or reasonably should have known had dangerous propensities of abusing their authority and for mistreating citizens by failing to follow written COUNTY Sheriff's Department policies.

b. Inadequately supervising, training, controlling, assigning, and disciplining COUNTY's sheriff's deputies, and other personnel, who Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

c. Failing to adequately train officers, including DOE OFFICERS, and failing to institute appropriate policies, regarding the use of excessive force, including deadly force.

d. Having and maintaining an unconstitutional policy, custom, and practice of using excessive force, including deadly force, which is also demonstrated by inadequate training regarding these subjects. Such policy, custom, and practice includes, but is not limited to, using deadly force against individuals who are not armed with any weapon.

e. Maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining the intentional

misconduct of COUNTY sheriff's deputies, such as DOE OFFICERS;

f. Failing to discipline COUNTY sheriff's deputies, such as DOE OFFICERS, for conduct such as excessive use of deadly force;

g. Ratifying the misconduct of COUNTY sheriff's deputies, such as DOE OFFICERS, for conduct such as excessive use of deadly force;

h. Failing to properly investigate incidents of excessive use of deadly force by COUNTY sheriff's deputies, such as DOE OFFICERS; and,

79. On information and belief, it is the policy, custom, and practice of Defendant COUNTY to not objectively investigate complaints of previous incidents of wrongful shootings, excessive use of deadly force, and illegal arrests, and instead, to officially claim that such incidents are justified and proper.

80. The policies, customs, and practices of Defendant COUNTY do in fact encourage COUNTY sheriff's deputies such as DOE OFFICERS, to believe that wrongful shootings and excessive use of deadly force are permissible and will be permitted by COUNTY. Defendants DOE OFFICERS were aware of the policies, customs, and practices of COUNTY, and DOE OFFICERS used excessive deadly force against Mr. Rabon. These policies and customs of the COUNTY were the moving force that caused DOE OFFICERS to shoot Mr. Rabon.

81. By reason of the aforementioned policies and practices of Defendant COUNTY, Mr. Rabon was severely injured and subjected to pain and suffering and lost his life.

82. Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, COUNTY condoned, tolerated and through actions and

inactions thereby ratified such policies. COUNTY also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Mr. Rabon, and other individuals similarly situated.

83. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendant COUNTY acted with an intentional, reckless, and callous disregard for the rights and the life of Mr. Rabon, and Mr. Rabon's and Plaintiffs' constitutional rights.

84. The following are only a few examples of cases where COUNTY sheriff's deputies used excessive deadly force and were not disciplined, reprimanded, retained, suspended, or otherwise penalized in connection with the underlying acts giving rise to the below lawsuits, which indicates that the COUNTY routinely ratifies such behavior, fails to properly train its deputies, and maintains a practice of allowing such behavior:

a. In *Estate of Merlin Factor v. County of San Bernardino, et al.*, Case No. 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b. In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

c. In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015

when he posed no immediate threat. In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved officer.

d. In *T.M. (Phillips) v. County of San Bernardino, et al.*, Case No. 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement.

e. In *Young v. County of San Bernardino, et al.*, Case No. 5:15-cv-01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

f. In *V.R. v. County of San Bernardino, et al.*, Case No. 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Mr. Ramos was experiencing a mental health episode when deputies used less-lethal and lethal weapons against him. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

g. In *M.A., et al. v. County of San Bernardino*, Case No. 8:20-cv-00567-JFW-SHK, Plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the case settled for a high seven-figure settlement. On information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this incident.

h. In *Brown v. County of San Bernardino*, Case No. 5:20-cv-01658, Plaintiffs alleged that San Bernardino County Sheriffs Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

i. In *Arrona, et al. v. County of San Bernardino et al*., Case No. 5:21-cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case settled for an undisclosed amount.

j. In *Alvarado v. County of San Bernardino et al.*, Case No. 5:20-cv-00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties settled for an undisclosed amount.

k. In *Barber v. County of San Bernardino et al.*, Case No. 5:22-cv-00625-KK-DTB, the plaintiff argued that his shooting by a San Bernardino County Sheriff's Deputy in 2021 was excessive and unreasonable where the plaintiff had been in a slow-moving vehicle and the deputy was approximately 30 feet behind, and had not identified himself as law enforcement, when he shot the plaintiff in the back of the head. In 2026, a jury agreed and awarded the plaintiff $27,350,000 in damages.

85. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by Defendant COUNTY were affirmatively linked to

and were significantly influential forces behind the injuries of Mr. Rabon and Plaintiffs.

86. By reason of the aforementioned acts and omissions of Defendant COUNTY, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support of Mr. Rabon.

87. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

88. Plaintiffs bring this claim individually and as successors in interest to Mr. Rabon and seek both survival and wrongful death damages under this claim. Plaintiffs are also claiming funeral and burial expenses.

89. Plaintiffs also seek statutory attorney fees and costs under this claim.

**FIFTH CLAIM FOR RELIEF**

**Municipal Liability – Failure to Train (42 U.S.C. § 1983)**

**By Plaintiffs against Defendant COUNTY OF SAN BERNARDINO**

90. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

91. Defendants DOE OFFICERS acted under color of law. The acts of said Defendants deprived Mr. Rabon and Plaintiffs of their particular rights under the United States Constitution.

92. The training policies of Defendant COUNTY were not adequate to train its sheriff's deputies to handle the usual and recurring situations with which they must deal.

93. Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

94. The unjustified and excessive use of force by the said Defendants DOE OFFICERS was a result of the negligent training by the Defendant COUNTY, which failed to train COUNTY sheriff's deputies as to proper police tactics, proper use of

force, proper use of deadly force, and proper detention and arrest procedures. COUNTY was responsible for the training of COUNTY deputies to ensure that the actions, procedures, and practices of said Defendants complied with Peace Officer Standards and Training (POST) training standards regarding proper police tactics, and proper use of deadly force.

95. COUNTY improperly failed to train COUNTY deputies to comply with POST training standards regarding proper police tactics, proper use of force, proper use of deadly force, and proper detention and arrest procedures. POST was established by the California Legislature in 1959 to set minimum training standards for California police officers. The training policies of COUNTY were not adequate to train its police officers to handle the usual and recurring situations with residents that said Defendants have contact with.

96. The training policies of the COUNTY were deficient in the following ways:

a. COUNTY failed to properly train COUNTY sheriff's deputies so that deputies do not escalate their interactions with members of the public and do not overreact and resort to use of deadly force when the use of force was not necessary.

b. COUNTY failed to properly train COUNTY sheriff's deputies, such as Defendants DOE OFFICERS, in proper police tactics, such as situational awareness so that police officers do not utilize negligent tactics. Because of this lack of proper training by the COUNTY, the Defendants DOE OFFICERS did not use proper police tactics in handling of the contact with Mr. Rabon, and instead used defective police tactics, including the lack of a situational awareness by the said Defendants. These defective tactics resulted in the death of Mr. Rabon.

c. The COUNTY failed to properly train COUNTY sheriff's deputies, such as Defendants DOE OFFICERS, in the use of effective communication prior to using force. Because of the lack of proper training by the COUNTY, said Defendants did not use effective communication prior to and during the use of force against Mr. Rabon. The ineffective communication of information by said Defendants prior to, and during the incident, resulted in the death of Mr. Rabon.

97. The failure of Defendant COUNTY to provide adequate training caused the deprivation of Mr. Rabon's and Plaintiffs' rights by said Defendants; that is, Defendant COUNTY's failure to train is so closely related to the deprivation of the Mr. Rabon's and Plaintiffs' rights as to be the moving force that caused the ultimate injury.

98. The following are only a few examples of continued conduct by sheriff's deputies working for COUNTY, which indicate COUNTY's failure to properly train its sheriff's deputies:

a. In *Estate of Merlin Factor v. County of San Bernardino, et al.*, Case No. 5:14-cv-01289-DMG-AGR(x), Plaintiffs argued that the use of deadly force against the unarmed Merlin Factor in 2013 was unreasonable. The police reports showed that Mr. Factor was unarmed, and the parties settled the case for a high six-figure settlement.

b. In *Ranero v. County of San Bernardino*, Case No. 5:16-cv-02655, the COUNTY settled with a man involved in a non-fatal police shooting that resulted in serious injuries including the loss of use of the victim's left leg. The COUNTY ratified the deputies' conduct, finding the shooting to be "within policy," and failed to reprimand, retrain, or otherwise penalize the deputies for their conduct.

c. In *Archibald v. County of San Bernardino*, Case No. 5:16-cv-1128, Plaintiff argued that the involved San Bernardino County sheriff's deputy used deadly force against the unarmed Nathanael Pickett in 2015 when he posed no immediate threat. In 2018, the jury in that case returned a $33.5 million verdict against Defendant County of San Bernardino and its involved officer.

d. In *T.M. (Phillips) v. County of San Bernardino, et al.*, Case No. 5:18-cv-2532-R-PLA, Plaintiff alleged that the shooting of Lajuana Phillips was excessive and unreasonable. In 2018, the parties settled the case for a seven-figure settlement.

e. In *Young v. County of San Bernardino, et al.*, Case No. 5:15-cv-01102-JGB-SP, Plaintiff argued that the 2014 shooting of Keivon Young was excessive and unreasonable. In 2016 a jury agreed and awarded a high six-figure verdict in Plaintiff's favor.

f. In *V.R. v. County of San Bernardino, et al.*, Case No. 5:19-cv-01023-JGB-SP, Plaintiffs argued that the use of less-lethal and lethal munitions against decedent, Juan Ramos, was unreasonable and excessive. Mr. Ramos was experiencing a mental health episode when deputies used less-lethal and lethal weapons against him. In 2022, a jury returned a $4.5 million verdict against Defendant County of San Bernardino and its involved deputies.

g. In *M.A., et al. v. County of San Bernardino*, Case No. 8:20-cv-00567-JFW-SHK, Plaintiffs alleged that the 2019 fatal shooting of Darrell Allen, Jr. was excessive and unreasonable when deputies intentionally shot Mr. Allen several times without warning. Mr. Allen was not an immediate threat of death or serious bodily injury. In 2021, the case settled for a high seven-figure settlement. On information and belief, no deputy was retrained, provided additional

training, disciplined, suspended, or terminated as a result of this incident.

h. In *Brown v. County of San Bernardino*, Case No. 5:20-cv-01658, Plaintiffs alleged that San Bernardino County Sheriffs Deputies used excessive and unreasonable force when they shot him several times and when he never threatened any person with a weapon or vehicle. In 2021, the parties settled the case for a high six-figure settlement. Upon information and belief, no deputy was retrained, provided additional training, disciplined, suspended, or terminated as a result of this settlement.

i. In *Arrona, et al. v. County of San Bernardino et al*., Case No. 5:21-cv-00389-DSF-KK, plaintiffs argued that the involved San Bernardino County Sheriff's Deputies used excessive physical and less-lethal force against plaintiffs in their home. The case settled for an undisclosed amount.

j. In *Alvarado v. County of San Bernardino et al.*, Case No. 5:20-cv-00592-DMG-SHK, plaintiffs argued that the County Correctional Deputies failed to provide medical and mental health care to Perla Alvarado, who was in their custody in the West Valley Detention Center. The failure to provide medical care resulted in her death. The parties settled for an undisclosed amount.

k. In *Barber v. County of San Bernardino et al.*, Case No. 5:22-cv-00625-KK-DTB, the plaintiff argued that his shooting by a San Bernardino County Sheriff's Deputy in 2021 was excessive and unreasonable where the plaintiff had been in a slow-moving vehicle and the deputy was approximately 30 feet behind, and had not identified himself as law enforcement, when he shot the plaintiff in the back of the head. In 2026, a jury agreed and awarded the plaintiff $27,350,000 in damages.

99. By reason of the aforementioned acts and omissions of Defendants, Plaintiffs were caused to incur funeral and related burial expenses.

100. By reason of the aforementioned acts and omissions, the Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and moral support of Mr. Rabon.

101. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

102. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Rabon and seek both survival and wrongful death damages under this claim.

103. Plaintiffs also seek statutory attorney fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

**Municipal Liability – Ratification (42 U.S.C. § 1983)**

**By Plaintiffs against Defendant COUNTY OF SAN BERNARDINO**

104. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

105. Defendants DOE OFFICERS acted under color of law.

106. The acts of Defendants DOE OFFICERS deprived Mr. Rabon and Plaintiffs of their particular rights under the United States Constitution.

107. On information and belief, a final policymaker for COUNTY, acting under color of law, who had final policymaking authority concerning the acts of DOE OFFICERS, ratified DOE OFFICERS' acts and the bases for them. The final policymaker knew of and specifically approved of DOE OFFICERS' acts.

108. On information and belief, a final policymaker for COUNTY has determined, or will determine, that the acts of Defendants DOE OFFICERS were "within policy."

109. By reason of the aforementioned acts and omissions, Plaintiffs have suffered the loss of love, companionship, affection, comfort, care, society, training,

guidance, and past and future support of Mr. Rabon. The aforementioned acts and omissions also caused Mr. Rabon's pain and suffering, loss of enjoyment of life, and death.

110. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

111. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Rabon and seek both survival damages, including pre-death pain and suffering, emotional distress, loss of life, and loss of enjoyment of life, and wrongful death damages under this claim. Plaintiffs are also claiming funeral and burial expenses.

112. Plaintiffs also seek attorney's fees and costs under this claim.

**SEVENTH CLAIM FOR RELIEF**

**Battery (Cal. Govt. Code § 820 and California Common Law)**

**(Wrongful Death and Survival)**

**By Plaintiffs against all Defendants**

113. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

114. Defendant DOE OFFICERS, while working as law enforcement officers including for the COUNTY and acting within the course and scope of their duties, intentionally shot Mr. Rabon. Defendants DOE OFFICERS had no legal justification for using deadly force against Mr. Rabon, and said Defendants' use of force while carrying out their duties was an unreasonable use of force, especially since Mr. Rabon was not an imminent threat to DOE OFFICERS or anyone else. The use of deadly force was also unreasonable because there were less intrusive options readily available.

115. As a result of the actions of DOE OFFICERS, Mr. Rabon suffered severe mental and physical pain and suffering, loss of enjoyment of life and ultimately died from his injuries and lost learning capacity.

116. COUNTY is vicariously liable for the wrongful acts of DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

117. The conduct of DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and Mr. Rabon, entitling Plaintiffs, individually and/or as successor-in-interest to Mr. Rabon, to an award of exemplary and punitive damages. Plaintiffs are also claiming funeral and burial expenses.

118. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Rabon and seek both survival damages, including for pre-death pain and suffering, and wrongful death damages under this claim.

**<u>EIGHTH CLAIM FOR RELIEF</u>**

**Negligence (Cal. Govt. Code § 820 and California Common Law)**

**(Wrongful Death and Survival)**

**By Plaintiffs against all Defendants**

119. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

120. The actions and inactions of Defendants were negligent, including but not limited to:

a. The failure to properly and adequately train employees including DOE OFFICERS with regard to the use of force, including deadly force;

b. The failure to properly and adequately assess the need to use force, including deadly force against Mr. Rabon;

c. The negligent tactics and handling of the situation with Mr. Rabon, including pre-shooting negligence;

d. The negligent detention, arrest, and use of force, including deadly force, against Mr. Rabon;

e. The negligent failure to provide and or summon prompt medical care to Mr. Rabon;

f. The failure to give a verbal warning or appropriate commands prior to shooting;

g. And failure to properly train and supervise employees, including DOE OFFICERS.

121. As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, Mr. Rabon suffered extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Also, as a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Rabon, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs are also claiming funeral and burial expenses.

122. COUNTY is vicariously liable for the wrongful acts of DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

123. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Rabon and seek both survival damages, including for pre-death pain and suffering, and wrongful death damages under this claim.

/ / /

**NINTH CLAIM FOR RELIEF**

**Violation of Bane Act (Cal. Civil Code § 52.1)**

**By Plaintiffs against all Defendants**

124. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

125. California Civil Code, Section 52.1 (the Bane Act), prohibits any person from interfering with another person's exercise or enjoyment of his constitutional rights by threats, intimidation, or coercion (including by the use of unconstitutionally excessive force).

126. Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of this state, has been interfered with, as described in subdivision (a), may institute and prosecute in his name and on his own behalf a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

127. The Bane Act, the California Constitution and California common law prohibit the use of excessive force and denial of medical care by law enforcement. California Civil Code, Section 52.1(b) authorizes a private right of action and permits survival actions for such claims. Defendants DOE OFFICERS violated Mr. Rabon's constitutional rights by using excessive force against him and denying him medical care, all of which acts were done intentionally and with a reckless disregard for Mr. Rabon's constitutional rights.

128. Defendant DOE OFFICERS' use of deadly force was excessive and unreasonable under the circumstances. Further, the involved officers did not give a verbal warning or appropriate commands prior to fatally shooting Mr. Rabon, despite

being feasible to do so. The conduct of Defendant DOE OFFICERS was a substantial factor in causing the harm, losses, injuries, and damages of Mr. Rabon and Plaintiffs.

129. Defendants DOE OFFICERS intentionally violated Mr. Rabon's constitutional rights by using excessive deadly force against Mr. Rabon, including but not limited to, shooting Mr. Rabon without warning, including while Mr. Rabon's back was turned to them and while Mr. Rabon lay chest-down on the ground. Further, these acts by DOE OFFICERS demonstrate that they had a reckless disregard for Mr. Rabon's constitutional rights.

130. At the time of the shooting Mr. Rabon did not pose an immediate threat of death or serious bodily injury and Mr. Rabon never verbally threatened anyone present prior to the shooting. There is direct and circumstantial evidence that DOE OFFICERS intentionally violated Mr. Rabon's rights by unlawfully shooting him despite the absence of any immediate threat, and by failing to properly provide medical care therafter.

131. Defendant DOE OFFICERS, while working as sheriff's deputies for the COUNTY, and acting within the course and cope of their duties, interfered with or attempted to interfere with the rights of Mr. Rabon to be free from unreasonable searches and seizures, and to be free from state actions that shock the conscience, by threatening or committing acts involving violence, threats, coercsion, or intimidation.

132. Mr. Rabon was caused to suffer extreme mental and physical pain and suffering and ultimately died and lost earning capacity. Plaintiffs have also been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Mr. Rabon, and will continue to be so deprived for the remainder of their natural lives. Plaintiffs also claim funeral and burial expenses.

133. The conduct of DOE OFFICERS was a substantial factor in causing the harm, losses, injuries and damages of Mr. Rabon and Plaintiffs.

134. Defendant COUNTY is vicariously liable for the wrongful acts of DOE OFFICERS pursuant to section 815.2(a) of the California Government Code, which

provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

135. The conduct of DOE OFFICERS was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Mr. Rabon entitling Plaintiffs to an award of exemplary and punitive damages.

136. Plaintiffs bring this claim individually and as successors-in-interest to Mr. Rabon and seek compensatory and survival damages, including for his pre-death pain and suffering, under this claim.

137. Plaintiffs also seek costs and attorney fees under this claim.

/ / /

/ / /

/ / /

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs TYESHA MOODY and ROBERT RABON request entry of judgment in their favor and against Defendants COUNTY and DOES 1-10, inclusive, as follows:

A. For compensatory damages, including both survival and wrongful death damages under federal and state law, in the amount to be proven at trial;

B. For other general damages in an amount according to proof at trial;

C. For other non-economic damages in an amount according to proof at trial;

D. For other special damages in an amount according to proof at trial;

E. For punitive damages against the individual defendants in an amount to be proven at trial;

F. Attorney's fees pursuant to 42 U.S.C. § 1988;

G. Attorney's fees and costs pursuant to Cal. Civ. Code § 52.1(h)

H. For interest;

I. For reasonable costs of this suit; and

J. For such further other relief as the Court may deem just, proper, and appropriate.

DATED: August 24, 2026 **LAW OFFICES OF DALE K. GALIPO**

By: *_/s/ Dale K. Galipo_*
DALE K. GALIPO
BENJAMIN S. LEVINE
Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

The Plaintiffs named herein hereby demand a trial by jury.

DATED: August 24, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: *\/s/ Dale K. Galipo*

DALE K. GALIPO
BENJAMIN S. LEVINE
Attorneys for Plaintiffs